UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUSTIN FINEHOUT and
KEVYN KIRKLAND,

    Plaintiffs,

v.                                        Case No. 8:20-cv-1634-T-60CPT

BDE FLORIDA LLC,

    Defendant.
_____/

### REPORT AND RECOMMENDATION

Before me on referral is Plaintiff Justin Finehout and Defendant BDE Florida, LLC's (BDE) *Joint Motion for Approval of FLSA Settlement Agreement and Dismissal with Prejudice.* (Doc. 28). For the reasons discussed below, I respectfully recommend that the parties' joint motion be granted.

I.

Finehout and his co-Plaintiff, Kevyn Kirkland, initiated this action in July 2020 against BDE, their former employer, seeking to recover, *inter alia*, unpaid overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, as well as unpaid wages pursuant to Florida common law. (Doc. 1). The Plaintiffs averred in

their complaint that they were misclassified as exempt employees and were denied pay for the overtime hours they worked during their tenure at BDE. *Id.*

In August 2020, in response to the Court's interrogatories, the Plaintiffs elaborated upon their allegations and damages calculations. (Docs. 9, 10). Of relevance here, Finehout asserted that he was employed by BDE from approximately August 13, 2019, to June 16, 2020, and that he typically worked seventy hours per week during this time period. (Doc. 9). As a result, he claimed he was entitled to $71,081.40 in unpaid wages and an equal sum in liquidated damages, plus attorneys' fees and costs. *Id.* In its answer, BDE denied the Plaintiffs' averments and raised several affirmative defenses. (Doc. 20).

In September 2020, Finehout and BDE reached a resolution of Finehout's FLSA and state-law claims (Doc. 28 at 2) and, by way of their instant motion, now seek approval of their settlement agreement pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) (Doc. 28-1).[1] Under the terms of that agreement, BDE is to pay Finehout $6,000 in unpaid overtime wages and an equivalent amount in liquidated damages, for a total sum of $12,000. *Id.* at 2. In addition, the parties stipulate that BDE shall pay $7,000 to Finehout's counsel to cover his attorneys' fees and costs. *Id.* The agreement also contains a provision by which Finehout will release BDE (and related entities and individuals) from all claims alleged

---

[1] The other plaintiff, Kirkland, has not settled with BDE.

in the instant case "or that could have been pleaded in [this] lawsuit based upon the facts asserted in" the complaint. *Id*. at 1.

I conducted a hearing on the matter on December 15, 2020, at which Finehout, his attorney, and BDE's counsel appeared. The matter is now ripe for the Court's consideration.

II.

Congress enacted the FLSA to protect employees from "inequalities in bargaining power between employers and employees." *Lynn's Food*, 679 F.2d at 1352. To further this purpose, the Supreme Court has placed "limits on the ability of private parties to settle FLSA lawsuits." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704–05 (1945)).

In FLSA actions brought directly by current and former employees for unpaid wages, district courts must scrutinize the parties' settlement "for fairness" before dismissing an action. *Id.* at 1306–07 (quoting *Lynn's Food*, 679 F.2d at 1353). Specifically, courts must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Sanchez v. M&F, LLC*, 2020 WL 4671144, at *3 (M.D. Fla. Aug. 12, 2020) (quoting *Lynn's Food*, 679 F.2d at 1355).

District courts are afforded discretion in deciding whether to approve FLSA settlements. *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir. 2013)

3

(per curiam) (citation omitted).[2] If a court finds that such a settlement reflects a fair and reasonable compromise of the contested issues, it may approve the agreed-upon resolution "in order to promote the policy of encouraging settlement in litigation." *Lynn's Food*, 679 F.2d at 1354.

In rendering such a determination, courts within this district often consider the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (citation omitted).

By my consideration, factors one, two, three, and six weigh in favor of approving the settlement agreement between Finehout and BDE. The main issue presented here implicates the fourth and fifth factors, which appear to have significantly impacted Finehout's decision to accept far less than the approximately $71,000 in unpaid overtime wages he referenced in his response to the Court's interrogatories. (Doc. 9). As noted above, Finehout has instead agreed to resolve his wage claims for only $6,000—an amount that is less than ten percent of his original

---

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

figure. In an effort to justify this reduced sum, the parties state in their motion that the gross amount Finehout will receive ($12,000, when liquidated damages are included) "is roughly equivalent to the back wages that [he] could have recovered for working approximately nine additional hours per week during the statutory period." (Doc. 28 at 4). And, they add, Finehout prefers to "conclude the litigation at this stage rather than incur the time and expense of protracted litigation or risk the possibility of failing to prove his claim." *Id*.

As to the matter of litigation risk in particular, the parties explained at the hearing that their settlement reflects a compromise on several disputed issues, including whether Finehout was an exempt employee; the amount of overtime he actually worked; the appropriate measure for any unpaid overtime; and whether BDE's conduct was willful. BDE's counsel adamantly asserts in this regard that Finehout was not entitled to any overtime wages under the FLSA and that, even if he was, the number of overtime hours he claimed would be vigorously contested. For his part, Finehout's attorney acknowledged that it would be a challenge for Finehout to prevail on the issue of his exempt employee status, and that he has limited documentation to support his overtime allegations in any event. Finehout's lawyer also clarified that his initial damages figure was determined without the benefit of any

discovery or any discussions with BDE and was based upon an overtime rate of time-and-a-half that he may not be able to prove at trial.[3]

When the Court questioned Finehout at the hearing, he confirmed that he understood the risks of continued litigation and that he did not disagree with counsels' opinion that the terms of the settlement agreement reflect a fair and reasonable resolution of his claims under the particular circumstances of his case.

Based upon my discussions with the parties' attorneys and with Finehout, it is apparent that there are several contested factual and legal issues that prompted their settlement agreement. It is also apparent that, given the expense and uncertainty of further litigation, Finehout and BDE—with the benefit of their lawyers' advice—agree that it is in their respective best interests to conclude this matter based upon terms they find to be fair and reasonable. *Id*. The parties' counseled decision to resolve Finehout's claims in this manner, particularly when coupled with the other information presented to the Court, provides a sufficient basis for approving their settlement agreement. *Dees*, 706 F. Supp. 2d at 1241 (finding that an FLSA settlement

---

[3] Finehout's counsel noted that, given the fluidity of Finehout's workweek and his status as a salaried employee, a factfinder might utilize what is known as the fluctuating workweek method to calculate the applicable overtime rate rather than employ the one-and-a-half rate upon which Finehout predicated his original damages number. As the Eleventh Circuit has explained, the fluctuating workweek method is one of the approved ways to determine overtime payments in FLSA cases, applies where an employee "is paid a constant weekly salary for fluctuating hours," and involves "dividing th[e employee's] weekly salary by the number of hours actually worked." *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310–11 (11th Cir. 2013) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942)). According to Finehout's attorney, use of the fluctuating workweek method in this action would lead to a substantially reduced recovery for Finehout (in the neighborhood of $24,000) even if Finehout proved he worked all of the claimed overtime hours.

"will, almost by definition, be reasonable" where "the parties are represented by competent counsel in an adversary context") (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)).

The fact that the parties' agreement includes a release provision does not alter my assessment. (Doc. 28-1 at 1). By my reading, this provision is not the type of general or pervasive release that courts have found to be anathema to the FLSA. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–52 (M.D. Fla. 2010). Such general or pervasive releases are frequently viewed as "'side deal[s]' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee." *Id.* at 1351 (citing *Dees*, 706 F. Supp. 2d at 1238–42). Because general releases "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer," they often do not survive judicial scrutiny. *Id.* at 1351–52.

The parties' narrowly-tailored release provision does not implicate such concerns. Unlike the "pervasive and unbounded" release at issue in *Moreno*, which called for the plaintiff to surrender "a dizzying array of claims, known and unknown, against the defendant," *id*. at 1350–53, Finehout is not required to relinquish his right to pursue unknown claims unrelated to his unpaid wage claims (Doc. 28-1 at 1). Rather, as noted above, his release is limited to the wage and hour claims that are, or could have been, asserted in this case based on the facts pleaded in the complaint. *Id.*

7

As such, the release clause does not undermine the fairness or reasonableness of the parties' settlement agreement. *See, e.g., Dumas v. 1 Able Realty, LLC*, 2018 WL 1791534, at *3 (M.D. Fla. Apr. 12, 2018) (approving FLSA release that did not require plaintiff to release all claims, but only those related to plaintiff's employment with defendant that were averred in the complaint), *report and recommendation adopted*, 2018 WL 1791535 (M.D. Fla. Apr. 16, 2018); *Cooper v. Garda CL Se., Inc.*, 2015 WL 9244682, at *1 (M.D. Fla. Dec. 18, 2015) (finding a release to be reasonable where it was limited "to federal and state law wage and overtime claims existing at the time of the settlement").

With respect to the remaining matter of attorneys' fees and costs, the FLSA requires the Court to review the reasonableness of the proposed fee amount to ensure "both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam). Here, although not explicitly addressed in their motion, the parties confirmed at the hearing that the agreed-upon payment of $7,000 in fees and costs was negotiated separately from Finehout's recovery and without regard to the settlement amount. The parties also state in their motion that this figure is far less than what could have been sought under the lodestar method. (Doc. 28 at 4). These representations are sufficient. *Clarke v. Alta Res. Corp.*, 2017 WL 4958771, at *4 (M.D. Fla. Oct. 30, 2017) (finding attorney's fees in an FLSA

8

settlement were fair and reasonable where they were negotiated separately from and had no impact on the settlement amount and were less than the lodestar amount); *Bonetti*, 715 F. Supp. 2d at 1228 (providing that reasonableness may be demonstrated by representing that the parties agreed to plaintiff's attorney's fees separately and without regard to the amount paid to settle plaintiff's FLSA claim).

### III.

For the reasons set forth above, I find that the parties' settlement agreement is a fair and reasonable resolution of their bona fide disputes regarding Finehout's FLSA claim. *See Lynn's Food*, 679 F.2d at 1353–55. Accordingly, I recommend that the Court:

1. Grant Finehout and BDE's *Joint Motion for Approval of FLSA Settlement Agreement and Dismissal with Prejudice* (Doc. 28);

2. Approve the parties' settlement agreement (Doc. 28-1); and

3. Dismiss Finehout as a party to this action with prejudice.

Respectfully submitted this 22nd day of December 2020.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record