UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVYN KIRKLAND,

      Plaintiff,

v.                                   Case No. 8:20-cv-1634-TPB-CPT

BDE FLORIDA LLC,

      Defendant.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

      Before me on referral is Plaintiff Kevyn Kirkland and Defendant BDE Florida, LLC's (BDE) *Joint Motion for Approval of FLSA Settlement Agreement and Dismissal with Prejudice.* (Doc. 38). For the reasons discussed below, I respectfully recommend that the parties' motion be granted.

I.

      Kirkland and his co-Plaintiff, Justin Finehout, initiated this action in July 2020 against BDE, their former employer, seeking to recover, *inter alia*, unpaid overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–217, and unpaid wages pursuant to Florida law. (Doc. 1). The gist of Kirkland and Finehout's complaint is that they were misclassified as exempt employees and were denied pay for the overtime hours they worked during their tenure at BDE. *Id.*

In August 2020, in response to the Court's interrogatories, Kirkland and Finehout elaborated upon their averments. (Docs. 9, 10). Of relevance here, Kirkland asserted he was employed by BDE from approximately January 2018 to June 16, 2020, and—although his schedule fluctuated—he worked an average of 70 hours per week. (Doc. 10). Relying on these assertions, he claimed he was entitled to $155,520 in unpaid wages, plus liquidated damages, attorneys' fees, and costs. *Id.* In its answer, BDE denied Kirkland and Finehout's allegations and raised several affirmative defenses. (Doc. 20).

In May 2021, Kirkland and BDE reached a resolution of Kirkland's FLSA and state-law claims. (Doc. 38 at 2). Under the terms of their settlement agreement, BDE is to pay Kirkland a total of $16,400, with $4,665 attributable to back wages, $4,665 credited to liquidated damages, and $7,070 allotted to Kirkland's counsel to cover his attorneys' fees and costs. (Doc. 47-1 at 2). Kirkland and BDE's agreement also contains a provision by which Kirkland will release BDE (as well as any related entities and individuals) from all claims alleged in this case "or that could have been pleaded in th[e] lawsuit based upon the facts asserted in" the complaint. *Id.* at 1–2.

By way of the instant motion, Kirkland and BDE now seek approval of their settlement agreement (Doc. 47-1)[1] pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).[2] I conducted a hearing on the matter in late June 2021,

---

[1] The parties filed a complete copy of their settlement agreement (Doc. 47-1) after the Court pointed out that the one they originally submitted was incomplete. (Docs. 38-1, 46).

[2] In September 2020, Finehout and BDE reached a resolution of Finehout's FLSA and state-law

at which Kirkland, his attorney, and BDE's counsel all appeared.  The parties' motion is now ripe for the Court's consideration.

II.

Congress enacted the FLSA to protect employees from the "inequalities in bargaining power between employers and employees." *Lynn's Food*, 679 F.2d at 1352. To further this purpose, the Supreme Court has placed "limits on the ability of private parties to settle FLSA lawsuits." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704–05 (1945)).

In FLSA cases brought directly by current and former employees for unpaid wages, district courts must scrutinize the parties' settlement "for fairness" before dismissing an action.  *Id.* at 1306–07 (quoting *Lynn's Food*, 679 F.2d at 1353). Specifically, courts must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Sanchez v. M&F, LLC*, 2020 WL 4671144, at *3 (M.D. Fla. Aug. 12, 2020) (quoting *Lynn's Food*, 679 F.2d at 1355).

District courts are afforded discretion in deciding whether to approve FLSA settlements. *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir. 2013) (per curiam) (citation omitted).[3]  If a court finds that such a settlement reflects a fair and reasonable compromise of the contested issues, it may approve the agreed-upon

---

claims.   (Doc. 28 at 2).   Upon Finehout and BDE's subsequent motion, the Court approved that agreement in January 2021.  (Doc. 37).

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

resolution "in order to promote the policy of encouraging settlement in litigation." *Lynn's Food*, 679 F.2d at 1354.

In rendering such a determination, courts within this District often consider the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (citation omitted).

By my assessment, factors one, two, three, and six weigh in favor of approving the settlement agreement between Kirkland and BDE. The main issues presented here implicate the fourth and fifth factors, which appear to have significantly impacted Kirkland's decision to accept far less than the approximately $155,000 in unpaid overtime wages he referenced in his response to the Court's interrogatories in August 2020. (Doc. 10). As noted above, Kirkland has instead agreed to resolve his wage claims for only $9,330—an amount that is less than ten percent of his initial figure. To justify this reduced sum, the parties state in their motion that the gross amount Kirkland will receive—namely, $16,400 when liquidated damages and attorneys' fees are included—"is roughly equivalent to the back wages that [he] could have recovered for working approximately nine additional hours per pay period during the contested" time frame. (Doc. 38 at 5). And, they add, Kirkland prefers to "conclude the litigation

4

at this stage rather than incur the time and expense of prolonged litigation or risk the possibility of not prevailing on his claims." *Id.*

As to the matter of litigation risk in particular, the parties represent in their motion (Doc. 38 at 4) and reiterated at the hearing that their agreed-upon resolution reflects a compromise on several disputed factual and legal issues. These include the period of Kirkland's employment at BDE; the number of hours he worked there; his rate of pay; the accuracy of BDE's records; and whether he was exempt from the protections afforded by the FLSA. With respect to the first several of these issues, Kirkland's attorney explained at the hearing that he arrived at his initial damages figure without the benefit of any discovery or other documents and instead relied upon Kirkland's best recollection of the relevant facts. He further explained that after receiving BDE's disclosures, he realized Kirkland was employed by BDE for only twenty months, not the thirty months he originally thought; and that BDE had GPS records from Kirkland's company vehicle which significantly undermined Kirkland's assertion he worked seventy hours per week during his time at the company. *Id.* at 5-6.

In addition to these considerations, Kirkland's counsel stated that, given Kirkland's status as a salaried employee and the fluidity of his workweek, his overtime rate would likely be calculated using the fluctuating workweek method rather than the time-and-a-half rate upon which he had initially based his damages estimate, and that

doing so would substantially limit Kirkland's recovery.[4]  *Id.* at 5–6.  Indeed, he admitted at the hearing that use of the fluctuating workweek method would reduce Kirkland's damages amount to roughly $14,000 even if Kirkland proved he worked all the claimed overtime hours.

Based upon the parties' representations in their motion and at the hearing, it is evident that these contested factual and legal issues prompted their settlement agreement.  It is also apparent that, given the expense and uncertainty of further litigation, the parties—with the benefit of their lawyers' advice—have determined that it is in their respective best interests to bring this case to closure based upon terms they find to be fair and reasonable.  Kirkland confirmed as much when I questioned him about the matter at the hearing.  The parties' counseled decision to resolve Kirkland's claims in this manner, particularly when coupled with the other information presented to the Court, provides a sufficient basis for approving their agreement.  *Dees*, 706 F. Supp. 2d at 1241 (finding that an FLSA settlement "will, almost by definition, be reasonable" where "the parties are represented by competent counsel in an adversary context") (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)).

---

[4] As the Eleventh Circuit has explained, the fluctuating workweek method is one of the approved ways to determine overtime payments in FLSA cases.  *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310–11 (11th Cir. 2013) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942)). The formula applies where an employee "is paid a constant weekly salary for fluctuating hours" and involves "dividing th[e employee's] weekly salary by the number of hours actually worked." *Id.*

The fact that the parties' agreement includes a release provision does not alter my assessment. (Doc. 47-1 at 1). By my reading, this provision is not the type of general or pervasive release that courts have found to be an anathema to the FLSA. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–52 (M.D. Fla. 2010). Such general or pervasive releases are frequently viewed as "'side deal[s]' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee." *Id.* at 1351 (citing *Dees*, 706 F. Supp. 2d at 1238–42). Because general releases "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer," they often do not survive judicial scrutiny. *Id.* at 1352.

The parties' narrowly-tailored release provision does not implicate such concerns here. Unlike the "pervasive and unbounded" release at issue in *Moreno*, which called for the plaintiff to surrender "a dizzying array of claims, known and unknown, against the defendant," *id.* at 1350–53, Kirkland is not required to relinquish his right to pursue unknown causes of action unrelated to his unpaid wage claims (Doc. 47-1 at 1). Rather, as noted above, his release is limited to the federal and state wage and hour claims that are, or could have been, asserted in this case based on the facts pleaded in the complaint. *Id.* As such, the release clause does not undermine the fairness or reasonableness of the parties' settlement agreement. *See, e.g., Dumas v. 1 Able Realty, LLC*, 2018 WL 1791534, at *3 (M.D. Fla. Apr. 12, 2018) (approving FLSA release that did not require plaintiff to release all claims, but only those related to

plaintiff's employment with defendant that were averred in the complaint), *report and recommendation adopted*, 2018 WL 1791535 (M.D. Fla. Apr. 16, 2018); *Cooper v. Garda CL Se., Inc.*, 2015 WL 9244682, at *1 (M.D. Fla. Dec. 18, 2015) (finding a release to be reasonable where it was limited "to federal and state law wage and overtime claims existing at the time of the settlement").

As for the remaining issue of attorneys' fees and costs, the FLSA requires the Court to review the reasonableness of the proposed fee figure to ensure "both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam). Here, although not explicitly addressed in their motion, the parties confirmed at the hearing that the agreed-upon payment of $7,070 in fees and costs was negotiated separately from Kirkland's recovery and without regard to the settlement figure. The parties also state in their motion that this sum is far less than what could have been sought under the lodestar method. (Doc. 38 at 6). These representations are sufficient. *Clarke v. Alta Res. Corp.*, 2017 WL 4958771, at *4 (M.D. Fla. Oct. 30, 2017) (finding attorney's fees in an FLSA settlement were fair and reasonable where they were negotiated separately from and had no impact on the settlement amount and were less than the lodestar figure); *Bonetti*, 715 F. Supp. 2d at 1228 (providing that reasonableness may be demonstrated by representing that the parties agreed to plaintiff's attorney's fees separately and without regard to the sum paid to settle plaintiff's FLSA claim).

III.

For the reasons set forth above, I find that the parties' settlement agreement is a fair and reasonable resolution of their bona fide disputes regarding Kirkland's FLSA claim.  *See Lynn's Food*, 679 F.2d at 1353–55.  Accordingly, I recommend that the Court:

1.     Grant Kirkland and BDE's *Joint Motion for Approval of FLSA Settlement Agreement and Dismissal with Prejudice* (Doc. 38);

2.     Approve the parties' settlement agreement (Doc. 47-1);

3.     Dismiss this action with prejudice; and

4.     Direct the Clerk of Court to terminate any pending motions and deadlines and to close the case.

Respectfully submitted this 20th day of July 2021.


HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge


## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal

conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record